George John BLAKELEY,
Petitioner—Appellant,

v.

Carl TERHUNE, Director, Department of Corrections, George Ortiz, Warden, Respondents—Appellees.

No. 03–16269.
D.C. No. CV–01–20167–JW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 2004.

Decided March 24, 2005.

Rehearing Denied June 20, 2005.

Carol Strickman, Oakland, CA, for Petitioner–Appellant.

Juliet B. Haley, Office of the California Attorney General, San Francisco, CA, for Respondent–Appellee.

Before B. FLETCHER, THOMAS and BEA, Circuit Judges.

MEMORANDUM *

Petitioner George John Blakeley ("Blakeley" or "Petitioner") appeals from the district court's denial of his federal habeas corpus petition challenging his 1995 California state conviction for voluntary manslaughter on the ground that his Fifth Amendment due process rights were violated by the district court's failure to give the jury an "imperfect self-defense" pinpoint instruction to the lesser included charge of involuntary manslaughter and that such failure resulted in prejudice to petitioner.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

In 1995, Blakeley was charged with one count of second-degree murder in violation of Cal.Penal Code § 187(a)[1] and one count of use of a dangerous weapon in violation of Cal.Penal Code § 12022(b). On August 22, 1995, after a three-day jury trial in California state court, Blakeley was convicted of voluntary manslaughter and use of a dangerous weapon. Blakeley was sentenced to 29 years and 4 months' imprisonment.

Blakeley appealed the judgment of conviction to the California Court of Appeal, which affirmed said judgment and held that the trial court did not err in failing to give the "imperfect self-defense" pinpoint instruction to the crime of involuntary manslaughter because "the theory has no special application to involuntary manslaughter." *People v. Blakeley*, 64 Cal.Rptr.2d 42, 44 (Cal.Ct.App.1997). The California Supreme Court affirmed the Court of Appeal, but on a different rationale. Clarifying California state law, the California Supreme Court held that a defendant "who, *with the intent to kill or with conscious disregard for life*, unlawfully kills in unreasonable self-defense is guilty of *voluntary* manslaughter." *People v. Blakeley*, 23 Cal.4th 82, 96 Cal. Rptr.2d 451, 999 P.2d 675, 681 (2000) (second emphasis added). The California Supreme Court further held that this clarification of the law did not apply retroactively to Blakeley, and thus the trial court did, in fact, err when it failed "to instruct the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter." *Id.* at 682.

However, the California Supreme Court held that the failure to give such instruction was harmless error. *Id.*

On February 27, 2001, Blakeley filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging his conviction for voluntary manslaughter on the ground that his Fifth Amendment due process rights were violated by the district court's failure to give the jury an "imperfect self-defense" pinpoint instruction to the lesser charge of involuntary manslaughter and that such failure resulted in prejudice to petitioner. On June 2, 2003, the U.S. District Court for the Northern District of California denied the petition.

We review a district court's decision to deny a 28 U.S.C. § 2254 habeas petition *de novo*. *See Taylor v. Maddox*, 366 F.3d 992, 997 (9th Cir.2004). Under the Antiterrorism and Effective Death Penalty Act of 1996, we will reverse a state court's decision denying habeas corpus relief where the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Petitioner argues that the state trial court's failure to give the "imperfect self-defense" pinpoint instruction to the charge of involuntary manslaughter was contrary to clearly established federal law as deter-

---

1. At the time of trial, *Murder* was defined as "the unlawful killing of a human being ... with malice aforethought." Cal.Penal Code § 187(a). California Jury Instructions—Criminal ("CALJIC") No. 8.31 (5th ed.1988) defined *Second–Degree Murder* as "the unlawful killing of a human being when: (1) [t]he killing resulted from an intentional act, (2) [t]he natural consequences of the act are dan-

gerous to human life, and (3) [t]he act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." CALJIC No. 8.31 further provided that "[w]hen the killing is the direct result of such act, it is not necessary to establish that the defendant intended that his act would result in the death of a human being." CALJIC No. 8.31 (5th ed.1988).

mined by the Supreme Court of the United States. We disagree.

*First,* there is no clearly established federal law which holds that a petitioner is entitled to a lesser included offense instruction, much less a pinpoint instruction under such a lesser included offense. To the contrary, the U.S. Supreme Court has held that instructions upon lesser included offenses were *not* compelled by Supreme Court precedent. *See Beck v. Alabama,* 447 U.S. 625, 628, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) (holding that the failure to give a lesser included offense instruction is a constitutional violation in *capital* cases); *see also Windham v. Merkle,* 163 F.3d 1092, 1106 (9th Cir.1998) ("Under the law of this circuit, the failure of a state trial court to instruct on lesser included offenses in a *non-capital case* does not present a federal constitutional question.") (emphasis added).

Here, the jury was given the standard CALJIC instruction for second degree murder, voluntary manslaughter, involuntary manslaughter, self-defense, "imperfect self-defense" and acquittal.[2] The trial court gave the standard CALJIC No. 5.17

"imperfect self-defense" instruction with respect to manslaughter generally.[3] Accordingly, the trial court's failure to give the "imperfect self-defense" pinpoint instruction to the charge of involuntary manslaughter was not error because here the jury received an instruction on both voluntary manslaughter, involuntary manslaughter and "imperfect self-defense" as to manslaughter generally.

Nor was the "imperfect self-defense" instruction given with respect to manslaughter "ambiguous." *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (internal citations omitted) (in determining whether an ambiguous jury instruction violates a constitutional right, courts will examine whether, considering the "context of the instructions as a whole and the trial record," there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the constitution.").

*Second,* we cannot say that the district court's failure to give the "imperfect self-defense" pinpoint instruction to the charge of involuntary manslaughter here resulted

2. The jury was given instructions on the lesser included offenses of voluntary and involuntary manslaughter under California law, as well as on second-degree murder. *Voluntary* manslaughter was defined as the "unlawful killing of a human being without malice ... upon a sudden quarrel or heat of passion." Cal.Penal Code § 192. CALJIC No. 8.40 provided that one is guilty of *voluntary* manslaughter where one "unlawfully kills another human being without malice aforethought but *with an intent to kill.*" CALJIC No. 8.40 (1989 Revision) (emphasis added). By contrast, *involuntary* manslaughter was defined as the "unlawful killing of a human being without malice ... in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." Cal.Penal Code § 192. CALJIC No. 8.45 provided that one is guilty of *involuntary* man-

slaughter where one "unlawfully kills a human being without malice aforethought and *without an intent to kill.*" CALJIC No. 8.45 (5th ed.1988) (emphasis added).

3. That instruction, CALJIC No. 5.17, provided as follows:

A person, who kills another person in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury, kills unlawfully, but does not harbor malice aforethought and is not guilty of murder. This would be so even though a reasonable person in the same situation seeing and knowing the same facts would not have had the same belief. *Such an honest but unreasonable belief is not a defense to the crime of voluntary or involuntary manslaughter.*
CALJIC No. 5.17 (5th ed.1988) (emphasis added).

in prejudice to the petitioner by "ha[ving] a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted). Nothing in the "imperfect self-defense" instruction restricted the "imperfect self-defense" to voluntary manslaughter. Rather, the jury was free to find the petitioner guilty of *either* voluntary manslaughter or involuntary manslaughter. At trial, petitioner admitted drawing a knife, claiming it was to defend himself; struggling with the victim; and, that the knife entered the victim's body. The principal question before the jury, then, was whether the State met its burden in proving beyond a reasonable doubt that the entrance of the knife into the victim's body was done with intent to kill or was a product of such clamied self-defense. There is nothing to suggest that, had the trial court given the "imperfect self-defense" pinpoint instruction to the involuntary manslaughter charge, the jury would have found that the petitioner had no intent to kill. Therefore, in light of the record as a whole, this court cannot say that the errors here had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637.

Accordingly, we **AFFIRM** the decision of the district court.